## ROBISON *vs.* SWETT & AL.

3 316
193 584

A deed void on its face, if it be registered, and the grantee enter on a part of the land and continue openly to occupy and improve it, is admissible as evidence of the extent of his claim.

Where the acts of ownership, and conduct of a person claiming adversely a title to wild lands, being unknown to the true owner, amount only to successive trespasses, they become, when known and acquiesced in by him who has the right, sufficient to constitute a disseisin.

Where, in trespass *quare clausum fregit*, the question turned upon the nature and duration of the plaintiff's possession of the land ;—it was *held* that evidence of the allegations in the writs in former suits against him, brought for the benefit of the present defendant, in which he was charged as a disseisor, was admissible, in connection with other circumstances, to shew knowledge on the part of the defendant and his grantors of the nature and extent of the plaintiff's claim.

An entry into land, to defeat a disseisin, should be made with that intention ; sufficiently indicated either by the act, or by words accompanying it.

THIS was an action of trespass *quare clausum fregit*, in which the issues were—1. not guilty ;—2. that the close was the soil and freehold of *Swett* one of the defendants ;—3. that it was the soil and freehold of *Swett* and others, of whom the plaintiff was one.

It appeared in evidence that the lots in question, which were in *Bridgton*, belonged to the original right of *Thomas Poor*, having been drawn to him in 1767, and confirmed in 1783, to hold in severalty, and that he, by deed dated *March* 16th, 1768, and recorded *May* 30, 1811, conveyed the premises to Col. *Poor* ;—that this Col. *Poor* died in *October* or *November* 1804 ;—that his heirs at law executed a deed *March* 12, 1810, which was recorded *April* 21, 1810, conveying the same lots to one *Webb* and *Swett* the defendant, under which the defendants justified ;—and that they were still wild and uncultivated lands, and were never inclosed within fences.

To maintain the issues on his part, the plaintiff offered in evidence a deed dated *March* 4, 1784, and recorded four days afterwards, made by *Benjamin Kimball*, *Enoch Perley* and *James Stevens*, styling themselves a committee of the proprietors of *Bridgton* to make sale of the lands of delinquent proprietors, and conveying to *Thomas Robison*, father of the plaintiff, whose right the plaintiff held, certain lots in *Bridgton*, and among them the

lots in question. To the admission of this deed the defendants objected, because no authority was shewn in the grantors to execute it; but *Preble* J. before whom the cause was tried, admitted it to be read to the jury, instructing them that it did not convey the title of *Poor*, but was evidence of the extent of the plaintiff's claim.

The plaintiff also offered the same *Enoch Perley* as a witness, who was objected to, on the ground of his liability on the covenants in the above deed; but on his producing a release of that liability from the plaintiff, made since the pendency of this action, he was admitted. Testimony was adduced on behalf of the plaintiff, tending to shew that *Robison* the father, and after him the plaintiff, had always maintained an exclusive occupancy of the lots, having an agent in their neighborhood to look after them ;—that the lots lying near the forks of the road, and being therefore exposed, peculiar care had been taken to protect them from trespasses ;—that he had paid all the taxes assessed upon them to the present time ;—and that since the year 1805, he had occasionally taken timber from them. He also endeavored to prove that though *Poor* well knew of the sale of the lots to *Robison*, and of his claim and exercise of acts of ownership over them, he never did *actually* interfere, or disturb the possession claimed by *Robison* under his deed. It appeared, however, that as *Poor* was once passing to *Bethel* along the public highway leading over these lots, he asked his agent, then in company, "if that was the "land which was or had been his ?" This, the defendants contended, was in law an entry on the land. It also appeared that *Poor*, at some time which was not distinctly ascertained, instructed his agent not to pay any more taxes upon these lots, for he should get them back again ;—and the agent said he had paid no taxes on them since 1775. *Poor* was much dissatisfied, and made great complaints of the manner in which he had been treated respecting his lands ; and in 1804, instructed an agent to obtain minutes of the sale of the lands in question, and of others, that he might know the purchasers. It also appeared that *Enoch Poor*, one of the heirs at law of Col. *Poor*, after his father's death, came to *Bridgton* 18 or 20 years ago, and offered to sell these lands, stating that he claimed them, and that the sales were

illegal. But no actual entry, or intermeddling with the posses-sion, by either of the *Poors* or any person in their behalf, was proved, unless the act of Col. *Poor* in riding along the highway over the lots, as above stated, constituted such entry.

Farther to show to the jury that by those interested adversely to the plaintiff he had always been regarded and treated as in the actual possession and occupancy of the lots in question, the plain-tiff offered in evidence an original writ of right, dated *June* 4, 1810, prosecuted against him by *Swett*, the defendant, and *Webb*, for their own benefit, in the name of the heirs at law of Col. *Poor*, who was therein alleged to have died *disseised*, and the present plaintiff alleged to be in possession ;—(see *Poor & al. v. Robison* 10 *Mass.* 131)—also a similar writ dated *May* 20, 1813.

These writs, though objected to, the Judge admitted to be read for the purpose above stated; each suit, after pending some time in Court, having been abandoned by the demandants.

The plaintiff also offered in evidence an agreement entered into *in behalf of said Swett* and *Webb*, in a suit instituted by them against *Enoch Poor & al.* and filed in the Supreme Judicial Court at *November* term 1813, in the county of *Essex*; (see *Swett & al. v. Poor & al.* 11 *Mass.* 549,)—in which agreement it is admitted that the present plaintiff was in possession of these lots claiming by an adverse title, at the time of the death of Col. *Poor*, and at the time of the execution of the aforesaid deed from his heirs at law. This also, though objected to, the Judge allowed to be read as evidence, in the nature of a confession on the part of *Swett* of the facts therein stated, so far as the present plaintiff was con-cerned.

Upon this evidence the Judge instructed the jury that the riding along the highway, as Col. *Poor* was proved to have done, and making the inquiry he did, was not an act which amounted in law to an *entry*;—that the recording of his deed from *Kimball*, *Perley*, and *Stevens*, by the grantee, was notice to *Poor* and all others whom it might concern, of the nature and extent of his claim, and that he intended to hold the land, but that it availed nothing by way of passing *Poor's* title;—that in order that it should avail *Robison*, it was necessary he should go into actual possession under it, and continue to occupy and hold the lands;—that these lands

being wild and uncultivated, the jury were not to expect the same evidence of occupancy which a cultivated farm would present to them;—but that facts and conduct on the part of a person exercising acts of ownership and claiming, adversely, title and possession, would amount in law to possession of the land, and disseisin, if known and acquiesced in by him who has the right; when, if unknown and not acquiesced in by such party, they would not amount to such possession and disseisin, but only to successive trespasses;—that the two writs of right and the agreement were not conclusive evidence, but were proper for the jury to consider as admissions and confessions of *Swett,* that Col. *Poor* died disseised, and that *Robison* was in possession, claiming adversely;—and that if, from the whole evidence, they believed that *Robison* went into possession under his deed, and had maintained a continued possession, exclusive and uninterrupted; and that however Col. *Poor* might complain, he never did actually interfere with the possession of the lots; they would find for the plaintiff;—which they accordingly did; and the Judge reserved, for the consideration of the whole Court, the questions of law presented by his ruling upon the evidence, and his instructions to the jury.

*Hopkins,* for the defendants. As the case finds that the legal seisin of these lands was once in Col. *Poor,* which was never controverted, it clearly follows, by well settled principles of law, that his heirs and assigns still have the legal seisin of the same land, unless they have been disseised. And this seisin carries with it the possession, unless there has been an adverse possession;—*Proprs. Ken. Purchase v. Call* 1 *Mass.* 484,—and it is always presumed to continue, until a disseisin is *proved. Same v. Springer* 4 *Mass.* 416.

The question therefore is, whether the facts in the case shew a disseisin of Col. *Poor;* or *such* a possession in the plaintiff as would enable him to maintain trespass against him who has the lawful seisin ?

The deed from *Kimball* and others to *Robison* ought not to have been admitted for either of these purposes, nor for any other purpose whatever;—because 1st. No authority is shewn in the persons styling themselves the proprietors' committee. 2d. Be-

cause it appears that the land had been set off to *Poor in severalty* many years before the assessments; and was not liable to be assessed by the proprietors. *Bott v. Perley* 11 *Mass.* 169.   3d. Nor was it competent evidence to shew the extent of *Robison's* claim, unless it be of a claim accompanied by an actual occupancy, or *pedis possessio*, an open, notorious, visible, and *continued* possession, in defiance of the right owner. *Little v. Megquier* 2 *Greenl.* 276.   4th. Nor for any other purpose; because, on its face, it appears that the proprietors had no seisin which they could convey; and that the lands, being the private property of a third person, were not liable to taxation.

Neither was that deed legal evidence to shew the nature and extent of *Robison's* claim.   The intent of the statutes of enrolment is to give notice of the *alienation* of lands, so as to protect *bona fide* purchasers.   The recording of a deed could be but presumptive notice, if the statute had not declared it sufficient.   But the deed to *Robison* discloses, on the face of it, a prior conveyance or grant from the same proprietors to *Poor*; and places *Robison* exactly on the footing of a second purchaser with notice: whose deed, whatever may be its effect as to strangers, can have none against the prior grantee.   To *him* it is no notice of an alienation, because he already himself has the title of the grantors, and could have no possible inducement to examine the registry to see if his grantors had made any subsequent conveyance, when they had no remaining right to convey.

The other parts of the case do not shew any such acts in *Robison* or his agent as constitute an actual disseisin of *Poor* or his heirs. They are at best but equivocal, or are few and solitary instances of trespass, not amounting to an ouster; or, if they should be considered as rising to the character of a wrongful possession, yet still they fall short of the legal evidence of a disseisin which will cast a descent, so as to take away the right of entry.—Here the counsel discussed somewhat at large, the doctrine of disseisin, stating the difference between a disseisin and a wrongful possession, and commenting on the following authorities. *Co. Lit.* 181, *a.* 153, *b. note* 288. *Lit. sec.* 279. *Com. Dig. tit. Disseisin F.* 1, 2. *Atkyns v. Horde* 1 *Burr.* 107. *Mattheson v. Trott Leon.* 209. *Blunden v. Baugh Cro. Car.* 303. A disseisin, to take away the

Robison v. Swett & al.

right of entry, must be a disseisin *in fact*, by which the rightful owner has been expelled by violence, or by some other act which the law regards as equivalent. *Teller & al. v. Burtis & al.* 6 *Johns.* 197. A mere entry and attornment of tenants is not enough. *Livingston v. Delaney* 13 *Johns.* 537. Nor is an inclosure by "lop-and-top" fence sufficient. *Hardenburg v. Schoonmaker* 2 *Johns.* 230. And the doctrine of an adverse possession must be taken strictly, and every fact made out by explicit testimony and not by inference. Every legal presumption is in favor of a possession subordinate to the title. 9 *Johns.* 163. And to maintain trespass, the plaintiff must shew either a legal title, or an *actual and continued possession, known to the true owner. Wickham v. Freeman* 12 *Johns.* 183. *Pray v. Clark* 7 *Mass.* 381. *Propr's Ken. Purchase v. Laboree* 2 *Greenl.* 275.

There being therefore no descent cast upon the heirs of *Thomas Robison*, the plaintiff has nothing in the lands; for the " occasional" entries on the lots, as stated by his agent, not being accompanied with the right, are only detached acts of trespass; and even these were all subsequent to the death of *Col. Poor*, and were unknown to his heirs, who appear to have resided more than 100 miles from their lands. These heirs became seised immediately upon the death of the ancestor;—*Little v. Libby* 2 *Greenl.* 242—and no formal entry was necessary, because there was no adverse actual, visible, or continued occupancy,—no surveys made, nor boundaries marked, nor fences erected, nor any other circumstance to awaken suspicion, except rumors, which existing facts always contradicted. At all events, the evidence of acts done by *Poor* and his heirs is as strongly indicative of actual possession and claim of title, as any on the part of the plaintiff; whose possession being therefore at best but *concurrent* with the heirs of *Poor*, cannot be favored against those who have the right. *Langdon v. Potter* 3 *Mass.* 215.

As to the writs which the Judge permitted to be read to the jury, they ought not to have been received as evidence of any fact alleged in them, because such allegations are not in truth the language of the party, he never being supposed to be versed in the abstruse principles of law on which his case is founded; but are merely the acts of the counsel who advised and drew the

writs. They also were made, as the evidence in this case shews, under a mistake both of law and fact; by which no man is bound. *May v. Coffin* 4 *Mass.* 347. *Warden v. Tucker* 7 *Mass.* 449. At the most, those writs are only instances in which the party *elected* to consider himself disseised, for the sake of the remedy. And if the party in such case so elect, when the wrong done to him is no more than a trespass, it does not thence follow that the trespass is a *disseisin.* The admission of the statement of facts in the case of *Swett & al. v. Poor & al.* is open to the same objections. In cases of this description the statement is always drawn with reference to a single point, every extraneous fact being wholly disregarded, and the statement discharged if found to be erroneous; the admissions being taken as applicable to the particular case, and placed on the same footing with allegations repelled by *protestando.* To give them any greater effect would impair and perhaps ultimately destroy this most useful method of terminating litigation.

*Fessenden* and *Deblois,* for the plaintiff. The acts of ownership exercised by *Robison* upon the land, connected with the deed from *Perley* and others to him, and with the knowledge of *Poor* and his heirs, and of *Swett,* and their admissions and declarations of the fact, furnish sufficient evidence that *Poor* was *disseised* of the lands in question. To constitute a disseisin, an open and constantly visible possession in fact is not necessary; it is sufficient, in the case of uncultivated lands, that it be such an occupancy as the nature of the subject will admit; and of that notoriety that the owner may be presumed to know that there is a possession, adverse to his title. *Propr's Ken. Purchase v. Springer* 4 *Mass.* 416. *Boston Mill Corporation v. Bulfinch* 6 *Mass.* 229. The adoption of a different rule, as urged by the defendants, would preclude the possibility of any disseisin of uncultivated lands. But with regard to such lands, those claims and acts of ownership, which, if unknown to the true proprietor, would amount only to trespass, become, when brought to his knowledge and acquiesced in by him, sufficient to constitute a disseisin. *Pray v. Pierce* 7 *Mass.* 381. In the case at bar this knowledge in the owner of the land was a question fairly and properly submitted to the jury,

and is found by their verdict. But this fact did not exist in any of the cases cited on this point by the counsel for the defendant, which therefore do not apply to the present.

But the fact of disseisin was sufficiently evident from the admission of the defendant himself, made of record in the case *Poor & al. v. Robison* 10 *Mass.* 131, which is considered as settling the law of this point in the present case. That such admissions are not to be retracted, is decided in *Porter v. Hill* 9 *Mass.* 34.

The doctrine of disseisin by election cannot in this case avail the defendants; because that election, when once made, is binding on the party making it, and he is not afterwards permitted to falsify the admission of record. *Runnington on Ejectment* 54, 55. Hence it *is* that an action of an higher nature, as a writ of right, is always a bar to one of inferior grade; for the bringing of such a writ supposes a right of entry in the tenant, as the bringing of a writ of entry supposes him in the actual possession.

Neither can it be maintained, that the act of *Col. Poor*, in riding over the land, along the highway, amounted to an *entry*. Any act of the party, to have that effect, must be proposed and designed for such end, and of a character distinctly to denote the intention with which it is done. It must be attended with a declaration of that intention;—not a casual entry;—but one made openly, formally, and *animo clamandi*. 3 *Bl. Com.* 174, 175, 179. 2 *Bl. Com.* 209. 1 *Cruise's Dig.* 13. 3 *Cruise's Dig.* 550. *Ford v. Lord Grey* 6 *Mod.* 44. 1 *Inst.* 245, *b.* *Plowd.* 92, 93. 1 *Saund.* 319, *note.* *Bul. N. P.* 103. *Skin.* 412. *Peake's Ev.* 306. *Jackson v. Schoonmaker* 4 *Johns.* 390. *Doe & al. v. Davis* 7 *East* 311. *Runnington on Ejectment* 202. The conduct of *Col. Poor*, having none of these attributes, does not amount to such an entry. The object, moreover, of an entry is to revest the *possession* in the true owner. But here the party was only on that portion of the land over which the public had lawfully acquired the easement of a road, and on which the plaintiff could not have contested his right of entry. Here, both parties had equal rights, and *Poor*, for aught appearing to the contrary, was merely enjoying the common privilege of the public highway.

It is conceded that nothing passed to *Robison* by the deed of *Perley* and others to him; but being registered it was properly

admitted to shew the nature and extent of his claim; and so far as the nature of the case would admit, it was tantamount to an actual occupancy, open and continued.

*Hopkins,* in reply, commented on the facts in the case, to shew that whatever *Col. Poor* might be bound to infer from the registry of the deed to *Robison,* the existing situation of the land would justify him in the belief that all pretence of claim under that deed was abandoned, there being no survey, mark of boundaries, or other vestige of adverse possession. And he argued that though a deed recorded, *accompanied* by a visible occupancy of *part* of the land, may be received as evidence of the extent of the grantee's claim to the tract *thus occupied;* yet no decision had gone so far as to give that effect to a deed of *wild land,* where the claimant had exercised none of the visible and unequivocal acts of ownership.

He also insisted that the allegations of record in the former suit concerning these lands ought not to be regarded in any other light than as legal fictions, devised for the purposes of justice in those particular actions. If similar allegations in other cases are to be taken as conclusive and binding on the parties, the confession of lease, entry and ouster, in ejectment, might always stand as evidence of an actual demise; and the averment of the loss of a ship, in an action of trover against the master, would support him in a claim against the owner for salvage. Besides, the suit in that case was subsequently discontinued; and it was never supposed that a writ of right, *thus terminated,* was a bar to another action.

The arguments, of which the foregoing is a brief abstract, having been submitted in writing during the vacation, the judgment of the Court was delivered at the ensuing *August* term in *Oxford* by

WESTON J. An entry into land, to purge a disseisin, should be made with that intention; and such intention should be sufficiently indicated, either by the act itself, or by words accompanying the act. *Coke Lit.* 49, *b.* 255, *b.* The act of Col. *Thomas Poor,* in riding along the public highway, which passed over these lots,

and there making inquiry about them, seems to have none of the properties of an entry of this description; and this point therefore, though taken at the trial, has not been urged in argument.

Certain objections are made in this case to the competency of a part of the testimony. A release having been given to *Enoch Perley*, by which his interest was removed, his competency as a witness was thereby restored. Evidence of the institution and prosecution of former suits, in relation to the title now in controversy, although by no means conclusive, and certainly open to explanation, was in our opinion admissible, as tending, in connection with other circumstances, to shew a knowledge on the part of *Swett*, and those from whom his title is derived, of the nature and extent of the plaintiff's claim.

The deed from *Kimball* and others to *Thomas Robison*, the father of the plaintiff, although not received as evidence of title, was admitted to shew the extent of the plaintiff's claim. That a deed from a party not having title, if duly registered, and if the grantee enter upon the land under his deed, and continue openly to improve and occupy a part of it may, in connection with such occupation, be considered as a disseisin of the true owner, is admitted as law, both in the case of *Little v. Megquier* and the *Proprietors v. Laboree*, cited in the argument. The tenant in such case, entering under claim and color of title, is regarded by the law with more favor than a mere naked disseisor, and is therefore entitled, as to all the land described in his deed, where there is no opposing possession, to the full benefit and protection of the statute of limitations. The jury in this case having found, under the direction of the Judge, that *Robison* the elder did go into possession of the land under the deed in question, and did continue to occupy it, the deed in our opinion, being duly recorded, was properly admissible as evidence of the extent of the plaintiff's claim.

The presiding Judge instructed the jury "that, if from the "whole evidence, they believed that *Robison* went into posses- "sion under his deed; that he had maintained a continued posses- "sion exclusive and uninterrupted, and that however *Thomas* "*Poor* might complain, he never did actually interfere with the "possession of the lots, they would return their verdict for the

" plaintiff." This direction does not appear to us to be at variance with the principles of law, or of adjudged cases. Whether the jury ought thus to have found, is not one of the questions before us. No motion to set aside the verdict as against evidence, if made, could be sustained, as it appears that a part only of the evidence is reported in this case.

The deed, from which the plaintiff has deduced his title, had been executed for nearly forty years, prior to the commencement of this action; the grantee had exercised acts of ownership under it; these facts were known to those under whom *Swett*, one of the defendants, claims; and no entry was made, or opposing claim effectually set up by them against the plaintiff's title. It might be a question whether, if the case required it, legal presumptions, under these circumstances, in aid of a deed so ancient, might not, in accordance with precedents, be resorted to; but upon this point we give no opinion.

The motion for a new trial is not sustained, and judgment is to be entered on the verdict.

NOTE. The *Chief Justice*, having formerly been of counsel, did not sit in this cause.