CASE 18—PETITION EQUITY—MAY 1.

# Haffendorfer v. Gault, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

ADVERSE POSSESSION.—Whether possession of one without title is ˜to-
be regarded as adverse or not depends always upon the intent, with
which the possession was taken and held, as it appears from the evi-
dence; and if it can be made to appear that the possession, though·
continuous, was not intended to be adverse, and that the occupant,
by words or acts, recognized and acknowledged the title of the true
owner, it can not be said that the possession was adverse. Actual,
exclusive occupancy or use evidenced by inclosure is but *prima facie*
evidence of adverse possession.

   In this action to recover land, the defendants in 1868, less than
fifteen years before the commencement of this action, actually pur-
chased from the, plaintiff and accepted from him a deed to land
entirely inside the boundary they now claim to have held adversely
since 1850, and even in their answer allege that the deed of 1868
was intended to include the very land in dispute.

   *Held*—That the deed of 1868 should be held conclusive evidence
that the possession of the land was not, previous to that date, intended
by those occupying it to be held adversely.

LANE & BURNETT FOR APPELLANT.

1. The defense of mistake relied on by appellees is wholly destitute of
  support.
2. To constitute adverse possession, there must be not only actual occupa-
  tion, but also a claim of title hostile to that of the true owner. (Ray
  v. Barker, 1 B. M., 365; Croan v. Joyce, 3 Bush, 456; 54 Cal., 547;
  58 Texas, 490; 8 Bissell, C. C., 394; 43 Mich., 547; 69 Ala., 400;
  Angell on Limitation, section 390; 3 Greenleaf (Maine Rep.), 126;
  7 Iredell (N. C.), 310,)

ARTHUR CARY FOR APPELLEES.

   Brief not in record.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

   In a division of the lands of Eudocia Puryear, in
the city of Louisville, made in 1843, between her
heirs, Mary Lignon received a lot described in the

deed of partition as beginning at the intersection of 18th and Broadway streets, running thence east with Broadway 210 feet; thence southward parallel with 18th street, but diverging westward of a line perpendicular to Broadway.

The heirs of J. Puryear received in the same division an adjacent lot, described as beginning at Lignon's corner on Broadway, running therewith east 112 feet; thence south, at right-angles thereto, —— feet; thence west, parallel thereto, to Lignon's line, and with it to the beginning. That lot was in 1857 divided between two of the heirs of J. Puryear, Wilson and Woodward, the first named receiving a lot designated in that division as lot 4, being the western portion adjoining the Lignon lot, and the latter receiving the eastern portion designated as lot 3, each of the two lots fronting fifty-six feet on Broadway.·

In 1849 Mary Lignon sold and conveyed the first-mentioned lot to Elizabeth Timmons, who died in 1865, leaving it to her four children, appellee, Mary Gault, being one of them.

In 1866, Wilson and Woodward sold and conveyed the two lots 3 and 4 to appellant. And in 1868 he sold and conveyed to Mary Gault and her three brothers, Bernard, John and Robert Timmons a part of lot 4 adjoining the Lignon lot, the part sold being described in the deed as follows: "Beginning at a point on the south side of Broadway 210 feet east of 18th street; thence southwardly with the west line of lot 4, as laid down in the plat recorded; * * thence eastwardly with the southern line of said

lot * to a point 112 feet west of the eastern line of lot 3; * thence north to the beginning; making a triangle of the piece conveyed, and leaving lots 3 and 4 with a front of 112 feet and running back the same width, leaving 3 and 4 in the shape of a rectangle.''

It will be perceived that the parcel of land thus described is in the form of a right-angled triangle, the hypothenuse of which is the original division line between the Lignon lot and lot 4, which ran from the corner on Broadway 210 feet east of 18th street, southward parallel with the latter; while the east line of the triangle, being the present division line between it and the part of lot 4 retained by appellant, runs south from the same corner on Broadway at right-angles to it and to the back line.

But it appears that there is now, and has been since about 1850, a fence extending from Broadway to the back line of lot 4, which is nine or ten feet east of, and parallel to, the line dividing the triangle and the part of lot 4 retained by appellant as fixed and described in the deed of 1868. And appellee, Mary Gault, having, by conveyances from her brothers, acquired title to the eastern portion of the Lignon lot and to the triangle, and being in possession and claiming up to the fence, appellant brought this action against her and her husband to recover the narrow strip of nine or ten feet.

Two defenses are relied on in the answer:

1. Mistake in the description of the land contained in the deed of 1868, which the court is asked to correct.

2. Limitation.

In their answer appellees aver that when the deed was executed it was understood and agreed between appellant and the purchasers that the fence was the eastern boundary of the land intended to be conveyed, but by mistake the line was located nine or ten feet west of it.

There is no evidence whatever to support that averment. On the contrary, the particularity and precision with which it is stated in the deed that lots 3 and 4 were to be left with a front of 112 feet on Broadway running back the same width, and that the part of lot 4 conveyed was in the shape of a triangle, show conclusively that the parties recognized the original corner on Broadway as being 210 feet east of 18th street, and intended the division line between the part of lot 4 sold and that retained by appellant to run from that corner south at right-angles to Broadway, leaving the narrow strip of nine or ten feet now in controversy entirely within the boundary of the unsold part of lot 4. For, if the fence had been made the division line, the land conveyed would not have been in the form of a triangle at all, nor would lots 3 and 4 have been left with a width of 112 feet.

It being then unquestionable that the land in controversy was intentionally excluded from the deed of 1868, and left inside the boundary of the unsold part of lot 4 as then recognized and agreed to by the parties, it is incumbent on appellees to show that they and those under whom they claim had the actual continuous and adverse possession fifteen years next before the commencement of this action in 1880.

But, as it is shown that the narrow strip of nine or ten feet, as well as the triangular piece conveyed in 1868, have been inside the inclosure of those owning the Lignon lot since the year 1850, the simple inquiry is whether such possession had been in legal contemplation adverse for the length of time necessary to bar recovery by appellant.

Whether possession of a party without title is to be regarded as adverse or not, depends always upon the intention with which the possession is taken and held, as it may appear from the evidence. As expressed by the Supreme Court of the United States, "the whole inquiry is reduced to the fact of entering, and the intention to usurp possession." And, in legal language, the intention guides the entry and fixes its character. (Angell on Limitations, section 386, and authorities there cited.)

It is true this court said in Jones v. McCauley's Heirs, 2 Duvall, 15, that "if the possession has been actual, continuous, and of a kind that furnishes the real owner a cause of action every day during the required time, it is adverse." And it has also been held that "actual exclusive occupancy or use, evidenced by inclosure continued for the required time," is a test.

But we do not understand that the owner of the legal title to land has ever been held by this court precluded from showing that an entry and occupancy by one without title was, in fact, amicable and not adverse, and thus recovering, notwithstanding the possession may have continued the required time. For if it can be made to appear that the possession, though actual and continuous, was not intended to

be adverse, and the occupier disclaimed title in himself, and by words or acts recognized and acknowledged the title of the true owner, it seems to us it would be an abuse of terms to say such possession was adverse.

In this case appellees in 1868, less than fifteen years before the commencement of this action, actually purchased and accepted a deed from appellant for land entirely inside the boundary to which they now claim to have held adversely since 1850, and in the same deed, by which they are bound, it was expressly stipulated that lots 3 and 4 were left with a width, front and back, of 112 feet, which covers all the land in dispute. And in their answer they aver that deed was intended to include it as well as the triangle, thus admitting appellant's title and right to convey it at that time.

It seems to us that parties who set up no other claim to land than the mere naked possession should be held bound by their own voluntary disclaimer of adverse possession, and that the deed of 1868 should be regarded as conclusive evidence that the possession of the land in dispute was not intended by those occupying it to be held previous to that time adversely to the true owners; and such has been the ruling of this court. (Croan v. Joyce, 3 Bush, 454.)

The judgment is therefore reversed, and cause remanded for judgment in favor of the plaintiff in the action.