## J. S. STOCKTON et al. v. CHARLES G. GEISSLER.

POSSESSION — *Acts of Ownership* — *Evidence.* Acts of ownership, such as returning land for assessment, payment of taxes, going upon the land, offering it for sale, openly and notoriously claiming it, may be given in evidence in connection with acts showing possession, such as fencing and cultivating the land, as tending to prove adverse possession.

### Error from Wyandotte District Court.

EJECTMENT. The facts are stated in the opinion. Judgment for plaintiff *Geissler*, on November 26, 1887. The defendants *Stockton* and *Little* bring the case here.

*J. W. Jenkins,* and *Hutchings & Keplinger,* for plaintiffs in error.

*Hale & Fife,* for defendant in error.

Opinion by STRANG, C.: Action in ejectment, to recover the possession of lots 1 and 2, in block 127, in the old city of Wyandotte. Defendants answered by a general denial.

The lots in question are a part of lands allotted by the Wyandotte commissioners, under treaty of January 31, 1855, ratified February 20, 1855, with the Wyandotte Indians, to John Beaver, and by John Beaver and Susan Beaver his wife to John McAlpine, trustee for the Wyandotte City Company, July 22, 1857. It is admitted that the plat of the city of Wyandotte covers the lots in question, and shows them to be embraced in the John Beaver allotment. John Waller purchased the lots described in the plaintiffs' petition at tax sale, on the 6th of September, 1860, and about that time took possession of the same, and fenced and cultivated the lots more or less until the spring of 1875, when he died, sometime between April 21 and May 19 of that year. April 21, 1875, he made a will, giving the lots in question to Rosina Waller, his wife. May 1, 1879, Rosina Waller conveyed the lots by deed dated May 1, 1879, to Annie B. Wood, which deed was recorded March 8, 1881. Annie B. Wood and George B. Wood her husband conveyed said lots to Thomas O'Keefe, by deed dated December 31, 1880, which was recorded the same day. June 6, 1882, Thomas O'Keefe conveyed the land to William Wogshom. March 7, 1883, William Wogshom conveyed the lots to E. E. Mandeville, and on the 7th day of August, 1883, Mandeville conveyed the same to Charles G. Geissler, the plaintiff below.

The tax deed of John Waller was void on its face. The plaintiff bases his title on the statute of limitations, alleging that he and those under whom he claims had the quiet, peaceable, notorious and adverse possession of said lots for fifteen years and more before the defendant below took possession of the same. The defendants below, John S. Stockton and A. W. Little, base their title to the lots upon a succession of conveyances, commencing with a deed by John McAlpine, trustee of the Wyandotte city company, to the heirs of M. R. McDonald, deceased, dated September 16, 1868, and recorded June 15, 1885; followed by deed from the heirs of M. R. McDonald, deceased, to John S. Stockton, dated January 24, 1887; and deed from John S. Stockton and wife to A. W.

Little, for an undivided one-half interest in the said lots, dated the first of February, 1887. The deed of John McAlpine, trustee, to the heirs of M. R. McDonald, lay in the office of the register of deeds of Wyandotte county from some time after it was executed, September 16, 1868, unrecorded and without any file-marks thereon, until some time recently, prior to its being recorded, June 15, 1885. There was in pencil, written on the back of said deed, the words, "To be delivered on return of town company's certificate." The case was tried by the court and a jury. Verdict for the plaintiff that he was entitled to the immediate possession of the lots described. The jury found also specially as follows:

"1. Prior to 1862 was plaintiff, or any under whom he claims, in open and visible possession of the premises in question? A. Yes.

"2. If the last question be answered in the affirmative, state the nature and character of such possession prior to 1862, and acts constituting the same. A. By cultivating and paying taxes.

."3. Subsequent to the fall of 1875, was the plaintiff, or anyone under whom he claims, in the open and visible possession of the premises in controversy? A. Yes.

"4. If the last question be answered in the affirmative, state the nature of the facts constituting such possession, and if such possession was indicated by acts, state by whom such acts were done, and when and for what purpose the same were done. A. By the plaintiff paying taxes, building sidewalk, and taking parties on said premises to sell the same, and officiating generally.

"5. If the jury find that the plaintiff has been in the open, notorious possession of the premises in question for fifteen years, state when said period began and terminated. A. Possession began in 1860, and has not terminated legally."

Motion to set aside the verdict, and for new trial. Motion overruled, and the ruling excepted to by the defendants below; and they bring the case here for review, and allege as grounds for reversing the case the following errors of law occurring at the trial:

*First:* The admission of evidence excepted to by the plaintiffs. The particular error complained of under this assign-

ment, and the only one noticed by plaintiffs in their brief, is
the allegation that the plaintiff below, Geissler, was permitted
to testify in substance that, though he had not been on the
lots with other persons in an effort to sell the same, he had a
letter from Scott, his agent, saying that he (Scott) had done
so. This is commented on in plaintiffs' brief, and attention
is called to the fact that such evidence was made the basis of
an instruction by the court to the jury. But turning to page
5, where such evidence in the record is pointed out, we con-
clude that counsel misconceived the evidence of Geissler, since
the record shows that Geissler's evidence was not what coun-
sel in their brief seem to think it was. The evidence pointed
out in the record does not show that Geissler was permitted
to testify that he had a letter from his agent, Scott, saying
that he (Scott) had gone on the lots in question, with other
persons, in an effort to sell them. The record shows that
what Geissler did testify to was, that Scott wanted to sell the
lots; "that he had several men that wanted to buy them, and
he kept writing me to ask me what I would take for them."
This evidence would seem to be entirely different from what
counsel thought it was, and therefore does not support this
assignment of error; hence we conclude that, so far as this
particular assignment is concerned, the record shows no error.
The objection to this evidence as given came after the answer
was in, and no motion to strike it out was made, and there-
fore its admission cannot be complained of.

*Second:* In the rejection of evidence offered by the plain-
tiffs. There is no specific error pointed out under this assign-
ment, and we will not undertake to say there was error when
none is pointed out. An examination of the record shows
great liberality on the part of the trial court in the admission
of evidence, and this seems to be particularly true with regard
to evidence offered by the defendants below.

*Third:* In giving instructions to the jury objected to by
the plaintiffs. The first complaint in regard to instructions

is as to the third section of the first instruction, which reads as follows:

"The following facts all tend to show adverse possession. By going upon real estate and inclosing the same with a fence, or by plowing the land, or otherwise improving it, or exercising acts of ownership over it, as offering it for sale, taking persons upon it, publicly claiming to be the owner thereof, paying the taxes on it, and in fine, doing with it what any ordinary person does with his real estate."

This instruction is objected to upon the theory that many of the things enumerated, as going upon the land, publicly claiming to be the owner thereof, paying taxes thereon, do not tend to show possession of any kind. While no one of these things may be said to be sufficient, standing alone, to establish possession; yet we think each tends to prove possession, and grouped together, and coupled with other facts which tend to show possession, as in the instruction complained of, are sufficient to establish possession, and that such possession is adverse.

The next complaint refers to the last section of the first instruction, which reads as follows:

"Any act by the person claiming possession, which would warn strangers that he claimed to be the owner of the property, would be sufficient in law to create adverse possession."

This portion of the instruction standing by itself we think would be misleading, as indicating that a claim of possession is equivalent to possession itself. Any act by a person in possession which would warn strangers that he claimed to be the owner of the property, would be sufficient in law to create adverse possession. The instructions, as a whole, contain a correct statement as to what constitutes adverse possession, what tends to establish such possession, and the length of time it must continue to be available in securing title. And, taken as a whole, and together with the other instructions, which were pretty full, and also liberal toward the defendants, and, considered with the evidence in the case and the findings of the

jury, we are inclined to think there is no such error disclosed as would warrant a reversal of the judgment in the case.

There is no further specific error pointed out in plaintiffs' brief in the instructions. An examination of all the instructions given and refused, does not, we think, disclose error sufficient to authorize this court to interfere with the result of the trial in the court below.

The next complaint is, that the verdict is not sustained by sufficient evidence. We think it is. Waller had the land assessed to himself in 1859. He paid the taxes in 1860 for the year 1859. The lots were under fence and were being cultivated by him as early as 1861, or 1862. He continued to cultivate the land and to have it fenced until 1873, and there is some evidence by young Waller that they were under some fence as late as his leaving for Missouri, after the death of his father, in 1875. In 1875 Waller willed the property to his wife, which will was almost immediately probated, and soon after his widow deeded the property to Annie B. Wood, disclosing acts of ownership and control over the land that tend to show continual possession thereof. In 1879 and 1880 a sidewalk was placed along said lots, and a retaining-wall built in front of them. The evidence is not entirely clear as to who paid for making the walk, but there is evidence of Anderson that he consented for Woods that the parties anxious for the walk should build it, and he would see that they were paid for it. It was built, and the best evidence on the subject was, that it was built for the Woods. The city did not build it. After the death of Waller his widow paid the taxes on the lots, and his grantees continued to pay them down to the plaintiff below, and he has paid them since he purchased the lots. No one pretends to have been in possession of the lots except Waller and those claiming under him, from the time he took possession down to the time they were taken possession of and fenced by defendants below, in 1886. We think the record discloses evidence to sustain the verdict of the jury and all the special findings.

Counsel complain that the jury say possession commenced in

1860 and has not terminated legally.   By the use of the term "legally" we think the jury meant to say that the possession taken by John Waller in 1860 had continued in him and those who claimed under him down to the time when the defendants below took possession of the lots and fenced them, and that such possession would have continued still had the defendants not wrongfully deprived him of it.   What the jury may have thought about the manner in which the possession of the plaintiff below terminated is immaterial; but it is evident they thought, under the evidence, the possession of plaintiff below did not terminate until the defendants took possession of the lots and fenced them; and we are not prepared to say that they are not justified under the evidence in so finding. However that may be, we think there is evidence sufficient to justify the jury in finding that John Waller and his grantees had open and adverse possession of the lots for more than fifteen years, and that the plaintiff below was entitled to recover the possession of which he had been deprived. (*Cartwright v. McFadden*, 24 Kas. 622; *Gilmore v. Norton*, 10 id. 492; *Campbell v. Coonradt*, 22 id. 704.)

We recommend that the judgment of the district court be affirmed.

By the Court: It is so ordered.

VALENTINE, and JOHNSTON, JJ., concurring.

HORTON, C. J.: I concur in the syllabus, but not in all stated in the opinion.