## WÓRTHLEY *v.* BURBANKS ET AL.

[No. 17,183.   Filed January 12, 1897.]

ADVERSE POSSESSION.—*Essential Elements Of.*—Ordinarily there are five indispensable elements in adverse possession: 1. It must be hostile and under a claim of right.  2. It must be actual.  3. It must be open and notorious.  4. It must be exclusive.  5. It must be continuous.

SAME.—*Possession of Part of Tract, Constructive Possession of Entire Tract.*—Possession under color of title of any part of a tract of land is held constructively to include the whole of such lands.

SAME.—*Exercise of Exclusive Dominion.*—Possession under color of title cannot be more than the exercise of exclusive dominion over it.  It is not necessary that the land be cleared or fenced, or that any building be put upon it.

SAME.—*Unproductive Lands.—Actual Occupancy Not Necessary.*—Adverse possession of unproductive lands is shown by the recording of deed under which the occupant claims; payment of taxes; cutting of all the valuable timber; going upon the land at intervals, claiming absolute ownership; the employment of agents in the neighborhood to look after it, and the building of a brush fence around a portion cleared, without proof of actual occupancy.

From the Porter Circuit Court.  *Reversed.*

*E. D. Crumpacker* and *Collins & Collins*, for appellant.

*J. W. Youche*, for appellees.

HACKNEY, J.—The appellant sued to quiet her title to an eighty acre tract of land in Lake county, and the appellee, Burbanks, by cross-complaint, sought to

quiet the title thereto in himself. On change of venue from the Lake Circuit Court the cause was tried and a special verdict rendered in the Porter Circuit Court. The appellant and the appellee each moved for a judgment upon the special verdict, and the motion of the latter was sustained and that of the former was overruled. These rulings present the only question assigned as error in this court.

The facts found disclose that the appellee, in October, 1857, became the owner of the legal title to said lands; that his deed was properly recorded in January, 1858; that he never conveyed or transferred his said title; that he was not, and has not since been a resident of Lake county; that he did not see said lands excepting in the years 1858, 1880 and 1891, when during each of said first two years he visited said lands once and, in the last of said years, he built a small frame house thereon; that said lands were wild, uncultivated and unimproved and were never in his actual possession or occupancy prior to June, 1891; that for the years 1859 and 1860 said lands were subject to taxation in said county and were assessed in the name of said Burbanks, but said taxes, nor any taxes thereafter assessed were ever paid by him. For the years named said taxes became delinquent, and in January, 1861, said lands were sold therefor, by the treasurer of said county at public sale, and were purchased by one Dibble, who received a deed therefor in 1864, said lands never having been redeemed from said sale. Dibble sold to Arvida Worthley in March, 1868; Arvida Worthley conveyed to one Rose in January, 1873, and Rose, on the same day, conveyed to the appellant. The deeds of said several conveyances were duly entered for record in Lake county near the dates of their execution, and since June 16, 1869, said lands have been entered for taxation against said

Arvida Worthley and this appellant. The taxes on said lands, from the year 1859 until 1892, were paid by said several grantees, Dibble, Worthley and the appellant, and, in the year 1890, she paid the sum of $17.25, assessed in her name against said lands for a public ditch then constructed. Said lands are located about two miles from the village of Tolleston, and have ever been "barren sand ridges and hills, interspersed with a few sloughs; that said sand ridges contained no soil and were wholly unproductive and unfit for any kind of cultivation and wholly unfit to be used for farming or gardening purposes, or for any other useful purpose whatever; that the sloughs on said land produced nothing but a coarse kind of grass in small quantities, which was utterly worthless and unfit for any purpose and had no market value either in the vicinity of the land or anywhere else; that said land was * * and has been continuously * * * incapable of producing any kind of crop or yielding anything of value whatever." That when Dibble obtained his tax deed he went upon said land and cut off all timber of any value and removed the same, since which time said lands have been "covered in a large part by small brush and small scrub oak trees," of no value for any purpose; that said lands have never possessed any value, and have not been adapted to "resident purposes or platting or subdividing or to any other useful purpose."

"Said Arvida Worthley, in the summer of 1868, entered upon said land, claiming to own the same, and caused said land to be surveyed, and chopped and grubbed the brush out along the line thereof all the way around said tract, and caused stakes to be driven at the corners and some places along the line for the purpose of marking the line of said land, all of which remained visible to the common observer for four

years; that in the year 1869 the said Arvida Worthley frequently visited said land and went upon the same and openly and notoriously claimed to be the owner thereof, and gave permission to a resident in the vicinity of said lands to cut a small quantity of coarse slough grass thereon; that in the year 1870, said Arvida Worthley visited and went upon said land frequently, still claiming the ownership thereof, and during said year, he grubbed and cleared about a half acre of said land and enclosed the same with a brush fence, but the soil upon said land was so barren and poor that he did not plant any crop thereon, but, during said year, he planted a small patch of cranberry vines in a marsh or slough on said land." In each of the years 1871 and 1872 he went upon said land several times and openly and notoriously claimed to own the same, and gathered small quantities of cranberries therefrom.

In January, 1873, when said land was conveyed to the appellant, and when she and her husband, said Arvida, moved to Michigan City, from Tolleston, where they had theretofore resided, she, this appellant, put William L. Worthley, her son, in charge of said lands and authorized him to look after and care for the same; that from said date, each year, until and including 1878, said son visited said lands three or four times, at each visit going upon and over said lands, claiming at all times, openly and notoriously, that the appellant owned said lands, and during the same period and at all times thereafter she claimed, openly and notoriously, to own said lands. That in 1878, when her said son moved to a western state, she employed one Gibson, a resident of Tolleston, and authorized him to look after and take care of said land for her, and from that time to the time of the trial he went upon said lands several times each year for the

purpose of looking after the same, and at all times, during said period, he did openly and notoriously claim and declare that the appellant was the owner of said lands and that he, as her agent, was in charge thereof. That the said Arvida Worthley, from the time he purchased from Dibble until January, 1873, and this appellant, from January, 1873, to the time of the trial, continuously, openly and notoriously claimed to own said lands, and in like manner exercised all such acts of dominion, control, and ownership over the same as fully and completely as other owners of like lands exercised respecting the same, and that they did, severally, during said periods respectively, exercise such dominion, control and ownership over said lands as could be exercised in view of the condition, character and adaptability of said lands, all of which was open, notorious and visible, and to the exclusion of every other person. That Burbanks never inquired as to the ownership of said land from 1858 to 1891, and if he had made such inquiry in the vicinity of said land he could easily have ascertained, at any time from 1868 to the time he commenced this suit, that the said Arvida Worthley and this appellant claimed to own the land.

The question presented in this court is as to whether the facts so specially returned by the jury disclosed such adverse possession, by and in favor of the appellant, as to preclude the reassertion, by the appellee, of his title acquired in 1857.

In this State the statute of limitation, Burns' R. S. 1894, section 294 (R. S. 1881, 293), denies a right of action for the recovery of real estate after twenty years from the accrual of the cause of action, and this is the provision upon which the holder of lands in adverse possession for the term of twenty years is held to be the owner.

The able counsel for the parties agree that ordinarily there are five indispensable elements in this adverse possession, namely: 1. It must be *hostile and under a claim of right;* 2, it must be *actual;* 3, it must be *open and notorious;* 4, it must be *exclusive;* and 5, it must be *continuous.* In this agreement counsel are supported by the authorities. *Ward* v. *Cochran,* 150 U. S. 597; *Murray* v. *Hoyle,* 97 Ala. 588, 11 South. 797; *Ringo* v. *Woodruff,* 43 Ark. 469; *Oneto* v. *Restano,* 78 Cal. 374, 20 Pac. 743; *Noyes* v. *Heffernan,* 153 Ill. 339, 38 N. E. 571; *Hempsted* v. *Huffman,* 84 Ia. 398, 51 N. W. 17; *Gildehaus* v. *Whiting,* 39 Kan. 706, 18 Pac. 916; *Haffendorfer* v. *Gault,* 84 Ky. 124; *School Dist., etc.,* v. *Benson,* 31 Me. 381, 52 Am. Dec. 618; *Beatty* v. *Mason,* 30 Md. 409; *Middlesex Co.* v. *Lane,* 149 Mass. 101, 21 N. E. 228; *Paldi* v. *Paldi,* 95 Mich. 410, 54 N. W. 903; *Lantry* v. *Parker,* 37 Neb. 353, 55 N. W. 962; *Foulke* v. *Bond,* 41 N. J. L. 527; *Law* v. *Smith,* 4 Ind. 56; *Peterson* v. *McCullough,* 50 Ind. 35; *McEntire* v. *Brown,* 28 Ind. 347; *Richwine* v. *Presbyterian Church,* 135 Ind. 80; *Silver Creek Cement Corp.* v. *Union, etc., Co.,* 138 Ind. 297; *Dyer* v. *Eldridge,* 136 Ind. 654; *Roots* v. *Beck,* 109 Ind. 472, 1 Am. and Eng. Ency. of Law (2d Ed.), p. 795.

There is no question but that the appellant held, for the required period, the color of title to said lands, and that if she occupied or possessed, as required by the rule in adverse possession, any part of the land such possession will, under such color of title, be held, constructively, to include the whole of such lands. *Hargis* v. *Inhabitants of Con. Tp.,* 29 Ind. 70; *Jeffersonville, etc., R. R. Co.* v. *Oyler,* 60 Ind. 383; *State* v. *Portsmouth Savings Bank,* 106 Ind. 435; *Roots* v. *Beck, supra; City of Noblesville* v. *Lake Erie, etc., R. R. Co.,* 130 Ind. 1, 31 Am. St. 412; *Herff* v. *Griggs,* 121 Ind.

471; *Dyer* v. *Eldridge, supra;* 1 Am. and Eng. Ency. of Law (2d Ed.), p. 847.

The important inquiry, upon the facts found, is as to whether the appellant occupied or possessed, under the rule in adverse possession, any part of the land for the required term. Appellee insists that actual occupancy is necessary, while the appellant urges that occupancy is necessary only where it is possible with some return from the occupancy or use, and is not required if the land is not susceptible of some remunerative use. That there was not an actual occupancy for twenty years by or on behalf of the appellant or her grantors is not in doubt, nor is it questionable that the lands were not available for any productive use. The precise inquiry, therefore, is, what is meant by "possession," as applied to lands of the character of those in question here. It is manifest that there can be no absolutely unvarying rule with reference to every class of real estate, and that the required occupancy of or dominion over a section of desert lands, or of a mining camp, a non-navigable lake, a prairie, a forest, a fertile farm in a high state of cultivation, or a town lot would not answer as to a lot in the business center of a populous and thrifty city. As said in *Ewing* v. *Burnet,* 11 Peters, 41: "So much depends on the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it, that it is difficult to lay down any precise rule adapted to all cases." And, as said in the early case of *Robison* v. *Swett,* 3 Me. 316, where "lands being wild and uncultivated, the jury were not to expect the same evidence of occupancy which a cultivated farm would present to them."

In this connection it is said in 2 Wood on Limitations (2d ed.), section 267: "The kind of possession which will be sufficient must depend largely upon the

character of the land, the locality, and the purposes to which it can be put.  *  *  *  And where the land is so situated as not to admit of any permanent useful improvement, neither residence, cultivation, nor actual occupation are necessary where the continued claim to the premises is evidenced by notorious acts of ownership, such as a person would not exercise over lands which he did not own.    It is not necessary that the occupation should be such that a mere stranger, passing the land, would know that some one was asserting title to a dominion over it.  It is not necessary that the land be cleared or fenced, or that any building be put upon it.  The possession of land cannot be more than the exercise of exclusive dominion over it." Numerous cases are cited by the author which support the text.  See *Ewing* v. *Burnet, supra; Draper* v. *Shoot,* 25 Mo. 197, 69 Am. Dec. 462; *Ford* v. *Wilson,* 35 Miss. 490, 72 Am. Dec. 137; *Morrison* v. *Kelly,* 22 Ill. 610, 74 Am. Dec. 169; *Royall* v. *Lessee of Lisle,* 15 Ga. 545, 60 Am. Dec. 712; *Eddy* v. *Gage,* 147 Ill. 162, 35 N. E. 347; *Tucker* v. *Shaw,* 158 Ill. 326, 41 N. E. 914; *Whitaker* v. *Erie Shooting Club,* 102 Mich. 454, 60 N. W. 983; *Twohig* v. *Leamer,* 48 Neb. 247, 67 N. W. 152; *Mooney* v. *Cooledge,* 30 Ark. 640; *Normant* v. *Eureka Co.,* 98 Ala. 181, 12 South. 454; *Bowen* v. *Guild,* 130 Mass. 121; *Booth* v. *Small,* 25 Ia. 177; *Brett* v. *Farr,* 66 Ia. 684; *Murphy* v. *Doyle,* 37 Minn. 113, 33 N. W. 220; *Cooper* v. *Morris,* 48 N. J. L. 607, 7 Atl. 427; *Stockton* v. *Geissler,* 43 Kan. 612, 23 Pac. 619; *Foulke* v. *Bond, supra.*

It is true, as counsel for appellee insists, that in no one of these cases were there such slight acts of dominion over the lands in dispute as were exercised over those here in controversy during the last few of the twenty years from the first assertion of title by Dib-

ble, in 1861. But it can as safely be said that in no reported case were the lands in question so wholly unadapted to beneficial use as are the lands involved in this case. No act of dominion is suggested, with reference to the appellant's holding, which was not applicable to lands of productive qualities or subject to gainful use. If, as the cases cited concur in holding, actual residence, occupation, cultivation, enclosure, buildings or improvement are not indispensable, and that the possession necessary, depending upon the character and location of the land, is such as the claimant would exercise over property held in his own right and would not exercise over property which he did not claim, it would be difficult, indeed, to point to some act which the appellant did not but could have exercised, with benefit from the land, evidencing her adverse possession. From 1861 to 1873 fruitless efforts were made from year to year to make some beneficial use of the land, and they were fruitless because the land was not adapted to any fruitful use. Nothing remained to be done to manifest the adverse claim of ownership which would not have been unproductive, and anything else done must have been of a character not to be expected from a sincere claimant.

In Wood on Limitations, section 268, it is said: "In determining the question of adverse possession, the jury may take into consideration the nature and situation of the land. And the placing of deeds on record, passing over the tract, employment of agents living in the neighborhood to look after it and prevent trespassers upon it, payment of taxes continuously under claim of title, and the like, may be considered by them; and it is not always necessary to prove actual occupation by the claimant; but the acts referred to would not be sufficient of themselves to establish title by reason of adverse possession, unless the land was un-

susceptible of more definite and actual possession, or such acts were known to the party holding the legal title, and known to have been done under claim of adverse title." Citing authorities.

The general proposition involved in the authorities we have cited upon this branch of the question was recognized by this court in *Collett* v. *Board, etc.,* 119 Ind. 27. It was there said: "An entry upon land with the intention of asserting ownership to it, and continuing in the visible, exclusive possession under such claim, *exercising those acts of ownership usually practiced by owners of such land, and using it for the purposes to which it is adapted, without asking permission and in disregard of all other conflicting claims,* is sufficient to make the possession adverse." (The italics are our own.)

If the owner absents himself from lands of the character of those here involved and ignores for thirty odd years the known annual tax claims of the county and State against the land, he can but anticipate outstanding colorable adverse title; he cannot expect to be advised from a view of the land that it is in the possession of another, since none of the evidences of occupancy applicable to productive lands are required by law or would be probable from the customs of owners of such lands. The public records of conveyances, transfers and payments of taxes would be a natural and proper source of knowledge, and the open and notorious claim of title by another, evidenced by the general understanding of the people of the neighborhood, gained from the frequent proclamations of the claimant, would afford another means of information. If he visited the land he could see that the ancient timber was gone and that all of value had gone with it. This, while not always sufficient notice of an adverse claim or possession, would be a circumstance, which,

coupled with the other sources of notice to be antici-
pated, was proper to consider, and if all combined
were such notice as he might reasonably expect from
an adverse title, then they were sufficient notice. We
think the facts found by the jury establish every use
of the land of which it was capable; that it was such
use as was made by the owners of like lands; that the
appellant's dominion over the land was such that,
under the rules of law already stated, Burbanks was
chargeable with notice thereof.

It is said, however, that by the decision of this
court in *State* v. *Portsmouth Savings Bank, suprà*,
the law has been declared to be at variance with
the proposition that actual occupancy is not indispen-
sable where it may not be had with beneficial use. On
page 461 of the report of that case it was said: "It
was impossible for Bright to have had possession of
the bed of the lake, unless he in some way had con-
structive· possession, *because, during the time that he
claimed to be the owner, it was almost wholly covered with
water.*" (The italics are our own.) This statement, it
will be observed from a careful reading of the opin-
ion, was made in distinguishing between constructive
possession under color of title and actual possession
without color of title, with reference to the area to be
included in either possession. Standing alone it
would not follow that there could be no adverse "pos-
session because" the land "was almost wholly covered
with water."

The case of *Whitaker* v. *Erie Shooting Club, supra;
Brophy* v. *Richeson*, 137 Ind. 114, and perhaps other
cases, illustrate the proposition that there may be a
possession of lands covered by water. The question of
adverse possession in that case, however, was decided
upon the absence of evidence tending to show pos-
session for the required period, and not because such

possession was impossible. Moreover, if it should be conceded that the bed of a lake, covered with water was not capable of actual possession or occupancy, within the rule in adverse possession, the present case would not stand upon the same rule, for here actual occupancy is possible, but the many cases cited hold that it is not necessary where the land is not adapted to any beneficial use.

We conclude that the court erred in rendering judgment upon the verdict in appellee's favor, and the judgment is reversed, with instructions to render judgment upon said verdict in favor of appellant.