# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

AMOS F. MOORE.

*Filed at Ottawa October 11, 1895—Rehearing denied March 10, 1896.*

1. LIMITATIONS—*adverse possession of part of railroad right of way—effect.* Adverse possession of the lands outside of and adjoining a railroad fence placed by the railroad company within the line of its right of way, for more than twenty years, will bar the right of the railroad company to the land, whether it holds by fee simple title or a mere easement.

2. SAME—*title by adverse possession available for attack.* Title by adverse possession, which has become absolute, is as available for attack as for defense.

WRIT OF ERROR to the Circuit Court of Ogle county; the Hon. JAMES SHAW, Judge, presiding.

WILLIAM BARGE, for plaintiff in error:

The possession of the adverse claimant must not only be actual, open, hostile and continuous, but it must be accompanied by an intention on his part to hold the land so possessed as the owner of it. Sedgwick & Wait on Trial of Title to Land, secs. 754-757.

Possession, to be considered adverse, must be held with an intention to claim title.   *Davenport* v. *Sebring*, 52 Iowa, 364.

The fact of possession, and its character, or the *quo animo*, are the test.   *LaFrombois* v. *Jackson*, 8 Cow. 588.

A mere going upon the land by any one and staying there without the intent to claim and assert the land to be his own would not operate as an ouster.   The intention guides the entry and fixes its character.   2 Washburn on Real Prop. (2d ed.) 500.

The possession and occupancy of the plaintiff was in no way adverse to the easement given to the defendant. *Railroad Co.* v. *Paul*, 28 Kan. 816, holds that the owner has the right to every use of the right of way which can be made without interfering with the operation of the road, and to all grass and other vegetation which shall grow thereon.

A right of way established by grant is not lost by mere non-user.   Unless the non-user is a consequence of something which prevents the user, and is utterly inconsistent with its enjoyment, it continues to exist, although more than twenty years have elapsed.   *Arnold* v. *Stevens*, 24 Pick. 106; *Barnes* v. *Lloyd*, 112 Mass. 224; *Bannon* v. *Angier*, 2 Allen, 128; *Kuecken* v. *Voltz*, 110 Ill. 264.

Adverse possession is determined by the purposes and uses to be made of the land.   *Bowen* v. *Guild*, 130 Mass. 123; *Truesdale* v. *Ford*, 37 Ill. 210; *Brooks* v. *Bruyn*, 18 id. 539; *Scott* v. *Delaney*, 87 id. 148; *Austin* v. *Rust*, 73 id. 491.

J. C. Seyster, and Frank E. Reed, for defendant in error:

An easement is barred by non-user for twenty years, with open, adverse and exclusive possession by the owner of the soil.   *Auburn* v. *Goodwin*, 128 Ill. 57; *Railroad Co.* v. *Houghton*, 126 id. 233; *Peoria* v. *Johnston*, 56 id. 51; *Winnetka* v. *Prouty*, 107 id. 225.

Mr. Justice Baker delivered the opinion of the court:

This is trespass *quare clausum fregit*, brought November 4, 1893, by Amos F. Moore, against the Illinois Central Railroad Company. Four pleas—the general issue, *liberum tenementum*, five years' limitation and twenty years' limitation—were filed to the one count in the declaration. A new assignment of the trespass was made, and the *locus in quo* as therein described is sufficiently designated, for the purposes of this decision, by indicating it as a strip of land fifty feet wide on the easterly side of and along and adjoining the easterly line of fence along the line of the tracks of the Illinois Central Railroad Company, through the north-east quarter of the south-west quarter of section 34, township 23, north, range 8, east of the fourth principal meridian, in Ogle county, Illinois. By agreement of parties it was ordered that the pleas already filed stand to the new assignment, and that all replications proper to said pleas, or any of them, and rejoinders thereto, should be regarded as filed. A jury was waived and the issues tried before the court. The court found the defendant guilty and assessed the damages at five dollars, and after overruling a motion for a new trial rendered judgment on the findings, and this appeal was then taken.

In 1851 the title to the said north-east quarter of the south-west quarter of section 34 was in the State of Illinois. The charter of the Illinois Central Railroad Company was approved February 10, 1851, and in the third section thereof it was provided: "The said corporation shall have right of way upon, and may appropriate to its sole use and control, for the purposes contemplated herein, land not exceeding two hundred feet in width through its entire length." And also provided: "All such lands  *  *  *  belonging to the State are hereby granted to said corporation for said purposes." In section 14 of the act it was provided: "Said corporation shall,

within a reasonable time after said road and branches shall have been located, cause to be made a map and profile thereof, and of the land taken and obtained for the use of such road and branches, and file the same in the office of the Secretary of State, and also like maps of the parts thereof located in the different counties through which the same may pass, and cause the same to be recorded in the office for recording deeds in the county in which said parts of said road shall lie." And provided in section 15 as follows: "For the purposes of securing the construction of said road and branches, the right of way and all the lands which may be selected along the lines of said road and branches within this State, under the grant made by the government of the United States to the State of Illinois by virtue of an act granting the right of way, and making a grant of land to the States of Illinois, Mississippi and Alabama in aid of the construction of a railroad from Chicago to Mobile, passed September 20, 1850, and also the right of way, etc.,  *  *  *  also the right of way over and through lands owned by the State, are hereby ceded and granted to said corporation for the only and sole purpose of surveying, locating, constructing, completing, altering, maintaining and operating said road and branches as in this act provided.  *  *  *  The said Governor of the State of Illinois shall, in his official capacity, and in behalf of the State of Illinois, and under the great seal thereof, execute and deliver to said company a deed, in fee simple, of all said lands, etc., said right-of way," etc.

The railroad company located its road and selected its right of way through said north-east quarter of the south-west quarter of section 34 and constructed its railroad thereon, and on December 8, 1852, filed and recorded in the proper offices a map and profile of its location and right of way, but it seems that the plat filed by the company purports to take a strip two hundred "chains" wide, and not a strip two hundred "feet" wide.

Counsel for plaintiff in error contends that making and filing the map and profile constituted a taking and appropriation of a strip of land two hundred feet wide, under the provisions of the charter; that computation demonstrates that the land taken for the right of way through the tract of forty acres is two hundred feet wide; that the word "chains" on the map is repugnant and defeats the intention, and should be disregarded and considered as "feet," which would sustain the intention; and that what was done by the railroad company gave it actual, peaceable, exclusive and open possession of a piece of land for right of way two hundred feet wide, which included the strip fifty feet wide now in dispute. Defendant in error, on the other hand, insists that the railroad company never became the owner of the strip in controversy, and that the same never became or was a part of its right of way.

About 1853 the railroad company constructed fences along its right of way through said north-east quarter of the south-west quarter of section 34, on each side of its railroad track, and these fences were placed fifty feet from the center of the track, and were maintained in the same places until in the latter part of October, 1893, when the fence gang of the railroad company entered upon the strip of ground here involved and commenced the construction of a fence one hundred feet east from the center of the railroad track, and their acts in so doing constituted the grievance for which this suit was brought.

On December 7, 1854, the Governor of the State of Illinois, under and by virtue of the provisions of an act of the legislature approved March 4, 1843, issued letters patent to one Isaac Loose, purporting to convey to him the entire tract, containing forty acres, without reservation or exception. On June 14, 1866, said Loose entered into a written contract with defendant in error to convey to him said forty acres of land by deed with full covenants of warranty, upon his making certain payments of money at

certain designated times.  On April 13, 1869, said Loose and wife made such deed to defendant in error, purporting to convey the entire tract, without reservation or exception, and said deed was duly filed for record on May 17, 1869.  Defendant in error took possession of the land in 1866, under his contract of purchase, and ever since that time has been in the actual possession of, and has continuously occupied, farmed and cultivated, the whole of said forty-acre tract that lies outside of the part fenced by the railroad company.  During all that time the part of the land that lies on the easterly side of the railroad fence has been fenced and connected with another tract of land upon which has stood the dwelling house in which he has resided.  From the year 1867 down to the time of the trial he paid all taxes levied and assessed on the land, it being assessed as forty acres from the year 1867 to the year 1876, inclusive, and as 33.35 acres since 1876.  His right to the possession of the *locus in quo* was never invaded, challenged or questioned by any one up to the time of the acts complained of in this suit.  He testifies that at the time he purchased the land part of it was enclosed by fences that stood about fifty feet on each side from the center of the railroad track, and extended along each side of the track through the forty, and that he at that time believed in good faith, and has so continued to believe up to the present time, that he owned all of the forty acres of land that was not included within the old right of way fence of the Central road, and has, during all that time, claimed to own it.

We will assume, for the purposes of the case, that the effect of the grant from the State, the filing of the map and profile, and the acts of plaintiff in error in constructing its road, was to invest it with both constructive and actual possession of a right of way two hundred feet in width through said north-east quarter of the south-west quarter of section 34.  As we understand the case, it is immaterial in its decision whether it be regarded that

the railroad company became seized of the fee simple title to the right of way two hundred feet wide, or be regarded that the act of the legislature conveyed an easement only.

When the railroad company, in or about the year 1853, built fences along its right of way, and on each side of its railroad track, through the forty acres of land, it fenced in only fifty feet on each side of the center line of its track. ·From the evidence there is and can be no doubt but that the defendant in error, for a period of some twenty-seven years, extending from 1866 to 1893, was in actual, open, exclusive and adverse possession of the premises outside of and adjoining the fence on the east side of the railway, under a claim of ownership. From the time his actual and exclusive possession under claim of ownership commenced, of course the possession of the railroad company, whether actual or constructive, came to an end.   It is impossible that two persons or corporations should each be in the actual, exclusive and hostile possession of one and the same premises at one and the same time, and when there is an actual possession and occupancy by one, there is no place or room·for a constructive and hostile possession by another.

A continuous possession of twenty years under claim of ownership, and hostile to all the world, is a complete bar to all rights of entry that are not within the saving clauses of the statute, and it makes no difference whether such right of entry is based on a fee simple title ·to the land or on an easement, provided only the actual possession of the land is hostile to such title or easement.   The general rule is, that easements acquired by deed are not lost by non-user, where there is no adverse possession to bar the right.   (*Kuecken* v. *Voltz*, 110 Ill. 264.)   But a complete non-user of an easement for twenty years, with possession in another that is inconsistent with or adverse to the right of such easement, will bar the easement.   (*City*

*of Peoria* v. *Johnston,* 56 Ill. 45; *Village of Winnetka* v. *Prouty,* 107 id. 218; *Illinois Central Railroad Co.* v. *Houghton,* 126 id. 233; *Village of Auburn* v. *Goodwin,* 128 id. 57.) The doctrine is, that while mere non-user of all or a part of a railroad location or right of way does not defeat or impair the right, yet the adjoining land owner or the owner of the fee may obtain title or regain title by an adverse use and occupancy for the requisite statutory period, where the conduct of the railroad company has been such as to indicate its intention to abandon the whole or a part of the location or right of way. Pierce on Railroads, 260; 2 Wood on Railway Law, sec. 240; *Norton* v. *London and Northwestern Railway Co.* L. R. 9 Ch. Div. 623; *Same* v. *Same,* (Court of Appeals,) L. R. 13 Ch. Div. 268.

*Illinois Central Railroad Co.* v. *Houghton,* 126 Ill. 233, and *Illinois Central Railroad Co.* v. *O'Connor,* 154 id. 550, are decisions of this court to the same effect. The doctrine of those cases is, that the right of possession that a railroad company has in its right of way, whether by fee simple title or as an easement, is exclusive,—and that this is so, as to such easement, on account of the peculiar character of the easement; and that where the grantor of the railroad company, or his assigns, has subsequent possession of all or a part of such right of way for twenty years or more, by fencing and cultivating it along with the rest of his land, and during which time it is not included within the fences of the railroad company, the claim of right of way will be barred by limitation. We regard these two cases last cited as conclusive of this. The rule in this State furthermore is, that where the bar of the Statute of Limitations has become absolute, and the party entitled to its benefit is in possession under it, it is thereafter as available for attacking as for defensive purposes. *McDuffee* v. *Sinnott,* 119 Ill. 449.

In our opinion the case of *Clarke* v. *Dougan,* 12 Pa. St. 87, does not militate against the conclusion we have reached. In that case it was held that an assessment of

warranted land for a disseizing settler, of a less quantity than is called for by the warrant and survey, if made by his procurement or even with his knowledge and acquiescence, will lose to him his constructive possession, by detaching it from the landmarks that had sustained it. It is true that in the case at bar the defendant in error, while he paid taxes on the full forty acres for the first ten years, was after 1876 assessed on 33.35 acres only. The fenced right of way of the railroad company not being deducted, he during said ten years paid taxes on more land than he should have paid on, and thereafter paid on fewer acres than he should have paid on. But there is a marked and essential difference between *Clarke* v. *Dougan* and this case, that makes it an authority not applicable here. There the tract of land contained three hundred acres and the improvements extended to only thirty acres, and were confined to one side of the tract, and there thirty acres were set off to the settler by the claimant under the warrant title, such claimant deeming him entitled thereto as an actual settler. The only possession the settler had to the remaining two hundred and seventy acres of the tract was a constructive possession. And it was held, that when the settler represented his claim to the assessor to be for less than three hundred acres he deserted the lines of the tract, and having no other landmarks to give shape and feature to his claim, he abandoned his constructive possession altogether. Here, on the contrary, the possession was actual instead of constructive, and it extended to the whole of the forty acres except the strip one hundred feet wide through the tract that was enclosed by the fences of the railroad company, and defendant in error's fences, and actual occupation and cultivation of the soil of all the land in the tract that was outside of the railroad fences, were landmarks amply sufficient to give shape and feature to his claim and possession.

Our conclusion is, that the twenty years' limitation law tolls the right of plaintiff in error to the *locus in quo,* and entertaining that view there is no occasion for considering the matter of seven years' possession under color of title, with payment of taxes, or the matter of possession by actual residence for seven successive years under a connected title deducible of record.

For the reasons set forth herein the judgment of the circuit court is affirmed.          *Judgment affirmed.*