OLIVER TUCKER

v.

THOMAS SHAW.

*Filed at Mt. Vernon October 16, 1895.*

1. WITNESSES—*a witness having a conservator may still be competent.* Evidence that the mind of a witness is not so far enfeebled as to prevent an intelligent appreciation of his responsibility as a witness and a fair recollection and understanding of the matters about which he testifies, will sustain the admission of his deposition, although it is proved by court records that a conservator had been previously appointed on the ground that he was of feeble mind, not capable of transacting business, where they do not show the nature or extent of his mental impairment or that it was permanent.

2. EVIDENCE—*proof of deed shown to have been destroyed.* A deed and record thereof having been destroyed, the court may receive all such evidence as would tend to establish its execution and contents.

3. RECORDS—*deed of real property left for record is notice to all.* A deed of real property left with a recorder for record takes effect from that time, under the Recording law, as to subsequent purchasers of the land without notice.*

4. SAME—*effect of destruction of record of titles by fire.* The destruction by fire of the records of land titles has no effect upon the constructive notice given by recording a deed.

5. ADVERSE POSSESSION—*what is possession of swampy timber lands.* Adverse possession of swampy timber land is sufficient when it is all the possession that could well be had of land of that character, and shown by acts of ownership such as are ordinarily exercised by the proprietors of such lands.

APPEAL from the Circuit Court of Wayne county; the Hon. S. Z. LANDES, Judge, presiding.

H. TOMPKINS, and GEORGE M. NORRIS, for appellant:

Every one is presumed sane, but after an inquest that presumption is rebutted. *Railroad Co.* v. *Mills,* 91 Ill. 39.

If a deed is left with the recorder, the party leaving it with the recorder must have done all he could do,—he

---

*On the question when an instrument is regarded as recorded, or who must suffer by the clerk's failure to record it, the authorities are found in a note to *Ritchie* v. *Griffiths,* (Wash.) 12 L. R. A. 384.

must have paid the recorder. *Terrill* v. *Anderson*, 44 Mo. 307 ; Wade on Notice, sec. 149.

Wilson says he bought Shelton's pre-emption right. If so, it should have been in writing. *Lester* v. *White's Heirs*, 44 Ill. 464.

A claim based on a lost deed must be sustained by clear proof. The contents of an instrument, the consideration paid, by what power conveyed, etc., must be as fully and strictly shown as though the original was produced. *Marriner* v. *Saunders*, 2 Gilm. 23; *Bennett* v. *Webber*, 23 Ill. 98; *Owens* v. *Thomas*, 33 id. 320.

To destroy legal title, possession must be actual, visible and exclusive. *Bridge Co.* v. *Lonergan*, 91 Ill. 257; *Railroad Co.* v. *People*, id. 508; *James* v. *Railroad Co.* id. 554.

Evidence to defeat a pure legal title must be clear and convincing. Such title should not be overcome by loose and uncertain testimony or conjecture. *Jackson* v. *Berne*, 48 Ill. 208; *Railroad Co.* v. *Houghton*, 156 id. 233; *Turner* v. *Chamberlin*, 15 id. 272; *Allen* v. *Kellogg*, 17 id. 503; *Irving* v. *Brownell*, 11 id. 415.

CREIGHTON & KRAMER, and HANNA & HANNA, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action of ejectment, by Oliver Tucker, against Thomas Shaw, for the recovery of the south-east quarter of the south-west quarter of section 28, township 1, south, range 9, east of the third principal meridian, in Wayne county. The land is what is generally denominated swamp lands, and both parties claim title through Wayne county as a common source. The cause was tried by the court, without a jury, who found the defendant not guilty, and rendered judgment accordingly, from which judgment the plaintiff took this appeal.

It is admitted that the records of the county were destroyed by fire November 30, 1886. Appellant claims to have paramount title to the land in question by virtue of

a deed from Wayne county to the Illinois Southeastern Railroad Company, dated October 13, 1868, properly describing this tract, with other lands, and reciting that it conveyed about 45,000 acres of swamp land as a consideration for the building of the company's railroad through said county, and by *mesne* conveyances to the appellant. This deed to the railroad company was recorded June 15, 1871. Appellant claims that the railroad company took possession May 1, 1870, of the lands conveyed, and that the taxes on the land in dispute have been paid by appellant for fourteen consecutive years prior to the commencement of the action. Appellee claims title by *mesne* conveyances through S. J. R. Wilson, who, it is claimed, obtained a deed as for swamp lands for the whole south-west quarter of section 28, from Wayne county, by J. W. Barnhill, county clerk, in the spring of 1865, and by possession adverse to appellant for more than twenty years prior to the commencement of this suit. Appellant denies that Wilson ever obtained a deed from the county for the land, and denies also that the evidence sufficiently establishes such adverse possession in appellee and his grantors, and for the length of time as required by the statute to constitute a bar to the action.

The deposition of S. J. R. Wilson was taken by defendant, and the substance of his testimony was, that one Vincent Shelton had made improvements on the land, by way of building a dwelling and fencing and clearing about fifteen acres, as early as 1859; that Shelton lived on the land until in February, 1865, when he, Wilson, bought from Shelton the improvements and his preemption claim, and thereupon took possession of the land,—that is, the said south-west quarter of section 28; that either during the same month or in March following he bought the land from the county as swamp land, and obtained a deed therefor from the county clerk, and filed it immediately for record with the recorder of deeds of

Wayne county; that he never called for or obtained the deed thereafter, and did not know what became of it, but supposed it was destroyed by fire on November 30, 1886, when the records of the county were all burned up. It was admitted on the trial that the county records were so destroyed at that time, and it appeared from the evidence that no such deed or record thereof could be found. Wilson also testified that he was mustered out of the army December 29, 1864, and that he remembered that the purchase of the improvements and land was made in February or March following; that R. P. Hanna acted as his attorney in proving up the pre-emption and obtaining his deed for the land from the county clerk; that he continued in possession of the land by cutting and selling timber from it until 1877, when he sold to others, and had paid taxes four or five years, and afterwards heard that the railroad company was paying taxes on it; had paid before he could see the collector, but did not know that any one but himself claimed to own or to be in possession; that he did not think the county would sell the land twice. Ritter Wilson, his wife, gave testimony corroborating him as to the purchase from Shelton and cutting and selling timber from the lands, and said they had some deeds in the recorder's office at the time of the fire. Other witnesses corroborated Wilson as to possession and improvements of Shelton, and as to cutting and selling timber from the land, and other acts indicating possession in Wilson, soon after 1865, and that Wilson claimed to own the land by deed from the county.

J. A. Paul testified that shortly after the war he went to Fairfield with Wilson, and that Wilson employed R. P. Hanna as his attorney to prove up his pre-emption on the Shelton land, and that Wilson and Hanna went together into the clerk's office; that Wilson took possession of the land and exercised acts of ownership over it.

R. P. Hanna testified that in 1865, as late as April or May, he was employed as an attorney by Wilson to

prove up pre-emption and procure a deed to 160 acres of swamp land; that Shelton had made the improvement and Wilson had bought it. He said:. "We established the improvement and the pre-emption, and S. J. R. Wilson received a deed for the 160 acres of land. Jefferson Barnhill, county clerk, executed to Wilson a deed to the land Shelton claimed an improvement on. I do not know the numbers of the land, or what Wilson did with the deed. * * * I was of the opinion that under the swamp land laws of 1852 and 1854 the county could not sell and convey swamp land where there was an improvement on the same, except to the owner of the improvement, hence I advised Wilson to establish the improvement and take Shelton's pre-emption." While this witness testified that he did not recollect that he saw the deed executed and delivered, he was satisfied one was executed and delivered, as he was anxious to have it fixed up so as to secure the title in Wilson and defeat a certain swamp land mortgage then in litigation.

There was other evidence tending, in part, to show such a deed was made and in part to the contrary, but from the whole evidence, which we have carefully examined, we are satisfied it was sufficient on this point to justify the finding of the trial court.

Appellant proved by witnesses who had examined the swamp land entry book before it was destroyed, that the only entry in that book of any conveyance of the land in question was the one to the railroad company; but other witnesses who were attorneys, and accustomed to examine this book, and were familiar with it, testified that it was not correctly kept and was unreliable; that they had found instances where lands had been conveyed and the fact not noted on the book.

Appellant objected to the competency of Wilson as a witness, and gave in evidence the record of the county court of Wayne county, showing that at the September term, 1890, said Wilson was found to be of feeble mind

and not capable of transacting business, and that J. R. Creighton was appointed his conservator to manage his property. There was nothing in the record to show the nature or extent of the impairment of his mental faculties, nor was there any evidence tending to show that it was of a permanent or continuing character. Besides, the court heard evidence as to the condition of his mind at the time his deposition was given, which, with the deposition itself, tended to show that he was not insane, and that his mind was not so far enfeebled that he did not have an intelligent appreciation of his responsibility as a witness, and a fair recollection and understanding of the facts and circumstances about which he testified. He was cross-examined by appellant's counsel, and nothing was elicited tending to impair the force of his testimony. Under this state of facts we know of no rule of law by which his testimony could be excluded. The court would give it such weight as it was entitled to, and no more. 11 Am. & Eng. Ency. of Law, 444; *Langdon* v. *People*, 133 Ill. 382.

We think the preponderance of the evidence shows the execution and delivery of a deed of conveyance from the county, by the county clerk, to Wilson, in 1865, and that he filed it for record with the recorder of deeds at that time. The deed and record thereof having been destroyed, it was competent for the court to receive all such evidence as would tend to establish its execution and contents. Rev. Stat. chap. 116, sec. 28; 1 Devlin on Deeds, sec. 691; *Bush* v. *Stanley*, 122 Ill. 406.

The proof in this case indicates clearly that the deed executed to Wilson was that authorized by law in cases of sale of swamp lands by counties, which deed shall vest in the purchaser an absolute title, in fee simple, to the land therein described. Laws of 1854, p. 19, sec. 12.

Under our recording laws all deeds conveying lands, or any interest in them, take effect "from and after the time of filing the same for record," as to subsequent pur-

chasers without notice. (*Brown* v. *Banner Coal and Coal Oil Co.* 97 Ill. 214.) So the deed to Wilson took effect, as to the subsequent purchasers of this land, when he left it with the recorder for record. (*Merrick* v. *Wallace,* 19 Ill. 486; *Nattinger* v. *Ware,* 41 id. 245.) And the destruction of the records by fire had no effect upon the constructive notice existing by virtue of the recording of the deed. (*Franklin Savings Bank* v. *Taylor,* 131 Ill. 376.) The county, then, having no title to the land in dispute when the deed to the railroad company was made, in 1868, could not convey it.

We shall not add to the length of this opinion by reciting the evidence bearing on the question of adverse possession, under claim of ownership, for twenty years. The evidence showed that Wilson was in possession in 1868, when the county made the deed to the railroad company, under which appellant claims, and that Wilson and his grantees continued such possession to such extent as the character of the land would admit of, by cutting and hauling timber therefrom, and by selling timber to others in large quantities, which was converted into rails, posts and sawed lumber, and in various ways exercised acts of ownership over it until the commencement of this suit. The testimony shows that the land was not susceptible of much farm improvement. Appellee and his grantors exercised all the acts of ownership over it that are ordinarily exercised by the proprietors of swamp timber land. He had all the possession of the land that could well be had of land of that character. (*Davis* v. *Easley,* 13 Ill. 192.) There was such an appropriation as to apprise the community in its vicinity that the land was in his exclusive use and possession. (*Morrison* v. *Kelly,* 22 Ill. 609.) What acts may or may not constitute a possession are necessarily varied, and depend, to some extent, upon the nature, locality and use to which the property may be applied and the situation of the parties, and a variety

of circumstances have to be taken into consideration in determining the question.   *Eddy* v. *Gage*, 147 Ill. 162.

As the plaintiff must recover on the strength of his own title and not on the weakness of his adversary's title, it is not material to consider whether the conveyance to appellee is defective or not.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*