HENRY HARMS

*v.*

HENRY P. KRANSZ.

*Filed at Ottawa April 3, 1897—Rehearing denied October 8, 1897.*

1. CLOUD ON TITLE—*one acquiring title under the Limitation act may maintain bill to remove cloud.*  One acquiring title to land under section 1 of the Limitation act may maintain a bill, under section 50 of the Chancery act, (Rev. Stat. 1874, p. 204,) to quiet his title and remove a cloud therefrom.

2. EVIDENCE—*when tax receipts do not show exercise of dominion.*  Tax receipts are not sufficient to establish a claim of ownership or to show an exercise of dominion in lands, where the description contained therein does not correspond with the description of the land.

3. ADVERSE POSSESSION—*general rule as to possession stated.*  One who enters into possession of property under a deed or other paper title specifying certain boundaries, and occupies a part thereof by residence or otherwise, will be held to be in constructive possession of the whole; but when one enters without a paper title specifying boundaries, his possession, to be adverse, must be actual.

4. SAME—*when absence from premises will break continuity of possession.*  An absence of two years by a party who enters upon lands without a paper title specifying boundaries will break the continuity of his possession, where the lands are unimproved.  (*Downing* v. *Mayes,* 153 Ill. 330, distinguished and explained.)

5. SAME—*when cutting of timber does not constitute adverse possession.*  The occasional cutting and removing of timber by one party, under claim of ownership, from unimproved land enclosed by another under color of title, does not constitute adverse possession.

6. EQUITY—*has no jurisdiction to render a decree establishing title.*  Except as provided by the Burnt Records act, a court of equity has no jurisdiction to render a decree merely establishing or confirming a title, without reference to the removal of a cloud therefrom, or to quieting it in relation to such cloud.

APPEAL from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

This is a bill, filed on March 14, 1895, by the appellee against the appellant and about twenty other persons, praying that his title to lot 1 in the assessor's division of the north-east fractional quarter of section 3, township 40, north, range 13, east of the third principal meridian,

in Cook county, Illinois, may be quieted, established and confirmed, and that certain deeds therein named may be set aside and declared void as clouds upon the title of complainant. The bill alleges: "That the complainant, and those through whom he claims title to said land, have been in the actual, open, notorious, undisputed, uninterrupted and adverse possession and occupation of said land, and every part thereof, for more than twenty successive years last past, as the absolute owners of the same." The bill further alleges: "That, in consequence of the aforesaid possession and occupancy of said land for the time and in the manner stated, complainant has acquired title thereto, and is the owner thereof in fee." The bill also alleges, that a tax deed dated May 29, 1855, was issued by the sheriff to Edward A. Rucker; that a quit-claim deed dated May 29, 1855, was executed by E. A. Rucker to W. T. Barron; that a quit-claim deed dated April 26, 1869, was executed by William Barron, executor, etc., to John Mattocks and E. G. Mason; that a quit-claim deed, dated May 1, 1871, was executed by Mattocks and Mason to the appellant, Henry Harms. The bill prays, that said deeds may be delivered up to be canceled, and declared clouds on complainant's title.

Default was entered against the other defendants, except said Harms, who answered the bill denying that appellee was the owner of said land, or in possession thereof.

The cause being at issue, proofs were taken and a hearing was had. The court rendered a decree, finding that it had jurisdiction of the parties; that all the material allegations of the bill were true; that the equities of the cause were with the complainant; that complainant and those through whom he claimed title had been in the actual, open, notorious, undisputed, uninterrupted and adverse possession and occupation of said lot, and in the exclusive use and enjoyment thereof, for more than twenty years next preceding the filing of said bill, as the absolute owner of said premises; and that the complain-

ant was the owner thereof; and it was therein decreed, that the appellee was the owner in fee simple in possession of said property, and that the title thereto was thereby established and confirmed.

The following plat shows the location of lot 1 in controversy in this suit, and of the other lots adjoining it and in its neighborhood:

GAGE & DEMING, for appellant:

The adverse possession which is required to constitute a bar to the assertion of a legal title by the owner of it must be hostile or adverse, actual, visible, notorious and exclusive, continuous, and under a claim or color of title. *Zirngibl* v. *Dock Co.* 157 Ill. 430.

The mere cutting of a few cords of wood and stacking or piling it upon a piece of land occupied by other persons, and subsequently moving it off and selling it, do not constitute such occupation as is contemplated by the statute. *Hammond* v. *Carter*, 155 Ill. 579.

Two persons cannot each be in the actual possession of the same premises at the same time, and when there is an actual possession and occupancy by one there is no place or room for a constructive and hostile possession by another. *Railway Co.* v. *Moore*, 160 Ill. 9.

SCHINTZ & IVES, for appellee:

Possession of land may be had by any use that clearly indicates an appropriation to the use of the person claiming to hold the property, and what constitutes possession depends on the nature of the land and the use to which it may be put. *Eddy* v. *Gage*, 147 Ill. 162; *Tucker* v. *Shaw*, 158 id. 326; *Downing* v. *Mayes*, 153 id. 330.

It is not essential that a party who takes possession of land should enter under a deed or muniment of title, to cause the limitation of twenty years to run in his favor. It is sufficient for a party to take possession under claim of ownership and hold the time required by the statute. *Weber* v. *Anderson*, 73 Ill. 439.

Oral declarations of claim of title are not required. It is sufficient if the proof shows the party in possession so acted as to indicate he claimed title. Using and controlling property as owner is the ordinary mode of asserting a claim of title. *Railroad Co.* v. *Houghton*, 126 Ill. 233.

Possession being once established, such possession will be presumed to have continued until an interruption

is proved. Failure to use premises for a year or more will not constitute a break in the continuity of possession without evidence of an intention to abandon the possession. *Downing* v. *Mayes*, 153 Ill. 330.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The appellee seeks to show a title by establishing possession for twenty years under the first section of the Limitation law. It is claimed, that the possession began under one Antone Krummenacher, who died in January, 1862, and that after his death such possession was continued by his son, John Krummenacher, and a sister of the latter. It is not contended, that Antone Krummenacher, or John Krummenacher, his son, or any of his children, ever had any deed to lot 1, or ever entered into possession thereof under any deed or paper title. Appellee introduced in evidence, upon the trial, a quit-claim deed, dated January 11, 1895, executed by certain heirs of Antone Krummenacher to the appellee; also a sheriff's deed to himself, dated July 6, 1892, executed in pursuance of a judgment obtained by one Nicholas Kransz against John and Anna Krummenacher, under which execution was issued, a levy was made on said lot, and the same was sold to Nicholas Kransz, who assigned the certificate of sale to appellee.

The main question in the case is, whether appellee proved that he, and those under whom he claimed, were in possession of lot 1 for a period of twenty successive years, and that such possession was hostile or adverse, actual, visible, notorious, exclusive, continuous, and under a claim of title. If appellee really had title based upon such possession for twenty years, he had a title, which would authorize him to file a bill to quiet his title and remove a cloud therefrom under section 50 of the Chancery act. (1 Starr & Curtis' Stat. p. 419; *Walker* v. *Converse*, 148 Ill. 622).

The deed, executed to appellant by Mattocks and Mason in 1871, conveyed to him lots 1, 7, 8 and 10, as designated upon the plat set forth in the statement preceding this opinion. The four lots so conveyed contained thirty acres. Lot 9, lying north of lots 8 and 10, was owned by a man named Dickinson. The appellant, Harms, owned a tract of land north of lot 9. Appellant claims, that, in 1871, after obtaining his deed, he fenced in lots 1, 7, 8 and 10, and lot 9, obtaining permission from Dickinson to fence in lot 9 with the other four lots. There were forty-two acres in the five lots so fenced in. Appellant's contention is, that he was in possession of the five lots, so fenced in, for more than twenty years after 1871; or at any rate until 1886, at which time, as it is insisted, a tenant of his then on the land attorned to appellee, or some one of the persons under whom appellee holds. Appellant's testimony tends to show that the five lots were thus fenced in in 1871 or 1872; and that he rented them for pasture to quite a number of tenants living upon the tract of land which he owned, lying north of lot 9.

The appellee introduced in evidence certain tax receipts, with a view of showing that Antone Krummenacher and his son John exercised dominion over lot 1, and claimed to own it. Some of these tax receipts show a payment of taxes by Antone Krummenacher for certain years from 1850 to 1859 inclusive, except the years 1852 and 1858; but in none of these receipts does the description of the premises, upon which the taxes were so paid, correspond with the description of lot 1 in controversy here. The location of the land described in such receipts is not the same as the location of lot 1. Certain other receipts were introduced, showing payment of taxes for the years from 1862 to 1866 inclusive, and for the year 1871, by John Krummenacher; but these receipts show a payment of taxes for those years on lot 7, and not on lot 1. We do not regard the tax receipts, and the evi-

dence accompanying their introduction, as establishing any such payment of taxes upon lot 1 as amounts to a claim of ownership to that lot, or as shows the exercise of a dominion over it.

Neither Antone Krummenacher, nor John his son, nor any of his other children, put any fence around lot 1, or built any house upon it, or made any improvements of any kind upon it. It is sought to be shown, that they were in possession of the lot by proving that Antone, in his lifetime, and John, after his death, went upon the lot in the winter time during certain years, and cut fire-wood from it. It also appears in evidence, that, at one time, they cut some timber from it for the purpose of building a barn, but the barn is not shown to have been erected upon lot 1. John Krummenacher in his testimony states, that the lot was vacant property, or timber land.

The first act of cutting timber, of which there is any reliable evidence, occurred in the year 1858, when John Krummenacher says, that he went there with his father to cut some logs to build a barn. He says, that, after his father's death in 1862, he never did anything with the property, except that he went there in the winter time for fire-wood; and that he went there probably once in the summer time. His testimony shows, that, when he went upon lot 1 to cut fire-wood, he went across lot 11 to lot 2, then north to lot 1; that, in 1864, he was in Germany, and from 1870 to 1871 he was in Canada; and he says that he does not know whether wood was chopped there or not during the time he was so absent. There was then not a full period of twenty successive years from 1858 to 1878, during which he was in possession, because he was away during two of those years, and out of the country.

This absence during two years of the twenty broke the continuity of the possession, if the acts proven constituted possession. (*Gage* v. *Thompson*, 161 Ill. 403). Counsel refer to the case of *Downing* v. *Mayes*, 153 Ill. 330, as

showing that the failure to occupy premises for a certain time does not operate as an interruption of the possession. But it is to be observed, that, in *Downing* v. *Mayes*, *supra*, the party claiming the land entered upon it and built a house, stable, hog-pen, smoke-house, and enclosed the land with other lands; and that, although there was failure to rent the premises for two years, yet the improvements mentioned remained on the land; the house stood and the fence remained to indicate the claim of the owner, although the premises were unoccupied. Here, however, there were no improvements of any kind upon lot 1; and if the mere fact, that John Krummenacher went upon the premises in the winter to cut fire-wood, established a possession of the property, it certainly did not establish such possession during the two years when he failed to cut any fire-wood.

A man, named Gray, owned land west of lots 1 and 2; Crawford avenue ran east of lots 9, 8, 7 and 11; it appears from the testimony of the appellee, that there was a fence running along the north line of lot 9 as early as 1872; and also that in 1872 there was a fence running from lot 2 on the west side of lot 1 north to the north line of lot 9. John Krummenacher is unable to state, whether or not there was a fence on the east lines of lots 9, 8 and 7, as early as 1872; but the testimony of appellant's witnesses shows, that a fence was built upon the west side of Crawford avenue as early as 1872. The testimony of the appellee, however, does show that in 1876 there was a fence upon the east lines of lots 7, 8 and 9, or the west side of Crawford avenue and also that in 1876 there was a fence running from Crawford avenue along the south side of lot 7 as far westward as Gray's land. It is claimed by appellant and his witnesses, that the south fence ran from Crawford avenue to Gray's land directly west along the south lines of lots 7 and 1; the witnesses of appellee state that in 1876 the fence running west from Crawford avenue ran along the south line of lot 7 and, when it reached

lot 1, turned southward along the east line of lot 2, and then westward along the south line of lot 2 to Gray's land, thus enclosing lot 2 as well as lot 1. Harms says, that the line, which ran westward along the south line of lot 7, deflected southward and embraced a part of lot 2 before it touched Gray's land. But whether the south fence extended straight across from Crawford avenue along the south lines of lots 7 and 1 to Gray's land, or whether it turned southward so as to embrace lot 2 or a part of lot 2, it is nevertheless true, as shown by the testimony of appellee, that in 1876 lots 9, 10, 8, 1 and 7, and either all or a part of lot 2, were enclosed by fences. The enclosure so made by these fences was used by the tenants of Harms for the purpose of pasturing their cows. The testimony tends to show, that from 1876 up to 1886, such enclosure existed. The entrance of Krummenacher or those acting under his direction across lots 11 and 2, in order to gain access to lot 1 after the year 1876, must have been through some gate or other opening, made through one or the other of the fences so surrounding the lots. In view of this state of facts, it cannot be said, that after 1876 John Krummenacher was in the open, notorious and exclusive possession of lot 1. We said in *Illinois Central Railroad Co.* v. *Moore*, 160 Ill. 9, (on p. 15): "It is impossible that two persons or corporations should each be in the actual, exclusive and hostile possession of one and the same premises at one and the same time, and when there is an actual possession and occupancy by one, there is no place or room for a constructive and hostile possession by another." Here, in 1876, there was an actual possession and occupancy of an enclosure, which included lot 1, either by the appellant, or by some person other than appellee.

The general rule is, that, where a man enters into possession of premises under a deed or lease which specifies certain boundaries, and occupies by residence or otherwise a part of the premises, he will be held to be in

constructive possession of the balance by virtue of his deed or lease; but, where he does not enter under any deed or lease or other paper title specifying boundaries, his possession, to be adverse, must be a *pedis possessio*, or an actual possession. (*Morrison* v. *Kelly*, 22 Ill. 609). As, in the present case, the appellee did not enter under any deed or lease or other paper title, did the mere fact, that he went upon the premises occasionally during the winter time and once only in the summer for the purpose of cutting fire-wood, make his possession an adverse one? It will be found in most of the cases, where the cutting of timber upon land has been held to indicate an adverse possession thereof, that there have been improvements upon the land at the time such acts were performed. Thus in *Tucker* v. *Shaw*, 158 Ill. 326, where the party, claiming to be in possession, cut and hauled timber from swamp lands, and sold it to others in large quantities to be converted into rails, posts and sawed lumber, it appeared that improvements were made on the land by way of building a dwelling and fencing and clearing a certain number of acres. The mere cutting of fire-wood upon land occupied by other persons and moving it off do not constitute such occupation as is contemplated by the statute. (*Drake* v. *Ogden*, 128 Ill. 603; *Hammond* v. *Carter*, 155 id. 579).

This was not a bill, under the Burnt Records act, to establish title, but it was a bill under section 50 of the Chancery act to quiet title and remove a cloud. The bill showed, that the defendant's title was derived from and based upon a tax title; but there was no allegation in the bill, showing in what respect the tax deed, or title under which the defendant held, was invalid. In addition to this, no proof was introduced as to the existence of the tax deed, or as to its invalidity. The decree entered by the court below did not find that there was any cloud upon the title of the complainant, or order the removal or cancellation of any cloud. It is true, that,

where the bar of the Statute of Limitations has become absolute, and the party entitled is in possession under it, it is thereafter just as favorable for attacking as for defensive purposes, and may be successfully asserted against all the world including the owner of the former paramount title, but the bill which the holder of such title by limitation may maintain, is a bill not merely to establish the title, but to have the title of the former owner declared void, and removed as a cloud on the complainant's title. (*Walker* v. *Converse, supra*). The decree in this case merely establishes the title and declares the complainant to be the owner without finding that there was any cloud upon the title, and without removing any cloud from the title. We do not understand, that the owner of the title to land, whether he has acquired such title by a regular chain of conveyances from the government, or whether he has acquired it by twenty years' possession under the Limitation law, can file an ordinary bill in chancery merely for the purpose of establishing and confirming his title without reference to the removal of any existing cloud upon it, or without reference to quieting it as against some existing cloud. A special statute has been passed, known as the Burnt Records act, which has for its object the establishment of titles where the record evidence of such titles has been destroyed. If a court of chancery has jurisdiction to establish an existing title without reference to any need of quieting it or of removing a cloud upon it, then the passage of the Burnt Records act was unnecessary.

We regard the decree of the court below as erroneous, not only because of the defects in the decree in the respect last above indicated, but also because of the failure of the proof to show an actual, continuous, exclusive and adverse possession for a period of twenty years. Accordingly the decree of the Superior Court is reversed and the cause is remanded, with directions to dismiss the bill.

*Reversed and remanded.*